# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

02 FEB -1  AM 9: 26

N.D. OF ALABAMA

| | |
|---|---|
| JAMES W. HAND, et al., | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] |
| vs. | ]     CV-01-N-0455-S |
| | ] |
| CSX TRANSPORTATION, INC., | ] |
| | ] |
| Defendant(s). | ] |

**ENTERED**

FEB 0 1 2002

## Memorandum of Opinion

### I.    Introduction

In this action arising out of a motorist versus train event, the court has for consideration the motion of defendant CSX Transportation Inc. (hereinafter "CSX"), for summary judgment, filed December 14, 2001. (Doc. # 15). CSX contends that summary judgment is due in its favor as a matter of law, as deposition testimony of the plaintiff James W. Hand "unequivocally demonstrates that he is guilty of negligence and/or assumption of the risk, which conduct proximately contributed to cause this accident . . . ." (Doc. # 15, pp. 4-5). Plaintiff Hand naturally disputes this position, arguing that the instant facts "take this public grade crossing case out of the realm of ordinary public grade crossing collisions between a motorist and a train." (Doc. # 27, p. 2). The issues have been briefed by the parties and the court finds the matter now ripe for decision. Upon due consideration, the motion for summary judgment of defendant CSX is due to be and is hereby denied.



## II.    Background[1]

The facts are stated in short that on or about April 25, 2000, James Hand alighted onto United States Highway 31 (hereinafter "US 31"), a hard-surface road of four lanes, and directed his automobile in a southerly direction.   The mechanized buggy gained momentum, eventually reaching a sustained velocity of fifty-five (55) miles per hour – a mighty clip indeed, but one within the demarcations of roadway travel established for the area across which Mr. Hand traversed.  In due course Mr. Hand approached a stretch of US 31 located in the County of Shelby – still within his home state of Alabama – over which passed those familiar iron bars and oaken ties that ferry the mighty locomotives about the Nation.

Approximately one and three furlongs from the crossing, a pair of flashing lights came into Mr. Hand's range of vision.  To casual passers-by, the blinking sentries might well have portended the proximity of a locomotive – or its railcars, in tow – to the crossing. To Mr. Hand, the flashing lights *alone* conveyed nothing more than the fact that a train would be occupying the crossing at some point in the future.  For in the absence of any fusees present and blazing at the base of the flashers – an apparently standard practice of nearly twenty (20) years employed at this particular crossing whenever a railroad car was

---

[1] In developing the statement of facts in this opinion, the court considered the facts as agreed upon by the parties, as well as the court's own examination of the evidentiary record.  These are the "facts" for purposes of this opinion only.  They may not be the actual facts. *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994), cert. denied, *USX Corp. v. Cox*, 513 U.S. 1110 (1995).

Moreover, the court cannot help but add that the facts of this case elicit memories of famous car and railroad cases of years past. *See, e.g., Pokora v. Wabash Ry. Co.*, 292 U.S. 98 (1934) (Cardozo, J.); *Baltimore & Ohio R.R. Co. v. Goodman*, 275 U.S. 66 (1927) (Holmes, J.); *Martin v. Herzog*, 126 N.E. 814 (N.Y. 1920) (Cardozo, J.).  The court acknowledges that the language and style of these, and other cases, may have found their way into the body of this memorandum.

fouling or was about to foul the crossing – Mr. Hand presumed that no locomotive or railcar occupied, or was in close proximity to occupying, the crossing.   The evidence is undisputed that on this particular night, at the time Mr. Hand greeted the crossing, no fusees burned.

Further details as to Mr. Hand's precise situation merit little elaboration here, beyond mentioning that it was nighttime; that Mr. Hand was quite familiar with the highway and the locus of fate that lay before him; that about fifteen (15) feet from the crossing he witnessed (to his surprise) a dark-colored railcar emerge from the gloom; and that despite his best (and albeit belated) efforts to decelerate, inertia ultimately got the better of him.

Invoking the diversity jurisdiction of this court pursuant to 28 U.S. C. § 1332, Mr. Hand and his wife initiated the above-styled and charged negligence against CSX.  (Doc. # 1). They seek damages both compensatory and punitive.  The case against CSX does not alone stand upon proof of its negligence; however, as the railroad company has raised as a defense Mr. Hand's own negligence.  To these issues, then, the court now turns.

### III.   Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which

it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted); *see also Crawford-El v. Britton*, 523 U.S. 574, 600 n.22 (1998). The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the moving party has met this burden, "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

The court must grant a motion for summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249 (citations omitted); *accord Dzikowski v. NASD Regulation, Inc. (In re Scanlon)*, 239 F.3d 1195, 1198 (11th Cir. 2001); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). In rendering its decision, "[a] court 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the

4

evidence.'" *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 826-27 (11th Cir. 2000) (quoting *Reeves*, 530 U.S. at 150).

## IV.   Discussion

The position of CSX is straightforward and compelling. Alabama law – both statutory and common – requires a motorist to stop, look, and listen before crossing a railroad track. One who fails to comply with this obligation is guilty of contributory negligence as a matter of law, thus rendering his negligence alone the proximate cause of his injuries. (Doc. # 15, p. 6; *see also Ridgeway v. CSX Transp., Inc.*, 723 So. 2d 600, 605 (Ala. 1998); Ala. Code §§ 32-5A-150,[2] 32-5A-170[3]). The evidence unequivocally demonstrates that Mr. Hand made no

---

[2] Section 32-5A-150 provides:

(a) Whenever any person driving a vehicle approaches a railroad grade crossing under any of the circumstances stated in this section, the driver of such vehicle shall stop within 50 feet but not less than 15 feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:

(1) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a railroad train;

(2) A crossing gate is lowered or when a human flagman gives or continues to give a signal of the approach or passage of a railroad train;

(3) A railroad train approaching within approximately 1,500 feet of the highway crossing emits a signal audible from such distance and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard;

(4) An approaching railroad train is plainly visible and is in hazardous proximity to such crossing.

(b) No person shall drive any vehicle through, around or under any crossing gate or barrier at a railroad crossing while such gate or barrier is closed or is being opened or closed.

[3] Section 32-5A-170 provides:

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

effort to stop, look, or listen, as he approached the crossing on US 31 (until it was too late to do so).  The evidence likewise demonstrates that the flashers positioned at the US 31 crossing were operating on the night in question and were in fact seen by Mr. Hand at least one-half mile before he reached the crossing.  Mr. Hand is therefore guilty of contributory negligence as a matter of law, the argument goes, and cannot recover for himself or his wife as a result.  In support of this position, CSX cites *inter alia Gibson v. Norfolk Southern Corp.*, 878 F. Supp. 1455 (N.D. Ala. 1994), *aff'd* 48 F.3d 536 (11th Cir. 1995) – a case it contends "controls this case and leaves no doubt that when a motorist fails to comply with the stop, look and listen provision of Ala. Code § 32-5A-150(a)(1), he is contributorily negligent as a matter of law."  (Doc. # 30, pp. 1-2) (footnote omitted)).

Mr. Hand in opposition attempts to "take this public grade crossing case out of the realm of ordinary public grade crossing collisions . . ." by drawing this court to the line of cases that include, *inter alia*, *Birmingham Southern Railroad Co. v. Harrison*, 82 So. 535 (Ala. 1919), and *Washington v. Birmingham Southern Railroad Co.*, 82 So. 545 (Ala. 1919).  In this endeavor he has succeeded.

> Clearly the rule of stop, look, and listen bears upon the outcome of this action.
>
> The "stop, look, and listen" doctrine set out in § 32-5A-150 is also firmly rooted in our caselaw.  "It is established by our decisions that one who is about to cross a railroad track must stop so near to the track, and his survey by sight and sound must so immediately precede his effort to cross over it, as to preclude the injection of an element of danger from approaching trains into the situation between the time he stopped, looked, and listened and his attempt to proceed across the track.  The law thus imposes a continuing duty to see that the way is clear before attempting to cross."

*Ridgeway v. CSX Transp. Inc.*, 723 So. 2d 600, 604 (Ala. 1998) (quoting *Southern Ry. v.*

*Randle*, 128 So. 894, 897 (Ala. 1930)). Furthermore:

> it remains the law in this state that when a motorist, in violation of § 32-5A-150,
> fails to stop, look, and listen before crossing a railroad track and that failure
> results in injury or death caused by a collision with a passing train, the
> motorist is guilty of contributory negligence as a matter of law, unless special
> circumstances existing at the crossing suggest that even by keeping a proper
> lookout he could not have been aware of the presence of the railroad
> crossing or of the danger presented by that crossing.

*Ridgeway*, 723 So. 2d at 607 (citations omitted). CSX is absolutely correct in noting that this

very court has on a previous occasion applied the stop, look, and listen doctrine to a

motorist versus train transaction. *See Gibson v. Norfolk S. Corp.*, *supra*. Indeed *Gibson*

does to some degree control (or at least direct) the outcome of this case. Such control

stems not from the recitation of the rule; rather, it stems from the recitation of the exception:

> The general rule . . . is that where a motorist fails to "Stop, Look & Listen"
> before crossing a railroad track, and he thereby runs into or collides with a
> train on its track at a public crossing, he is guilty of contributory negligence
> as a matter of law and his negligence will be treated as the sole proximate
> cause of his injuries. *An exception to this rule arises when some peculiar*
> *environment or hazardous condition confronts the driver*.

*Gibson*, 878 F. Supp. at 1461 (quotations and citations omitted) (emphasis added).

A pair of pre-Depression Era cases illustrates how and when the exception is

triggered. The cases, *Birmingham Southern Railroad Co. v. Harrison*, *supra*, and

*Washington v. Birmingham Southern Railroad Co.*, *supra*, presented separate causes of

actions arising out of the same collision between an automobile and a railcar. *See*

*Washington*, 82 So. at 545. In both cases, the evidence established that the railroad had

instituted a policy of ringing a gong in the event of a railcar's passage along the crossing.

At the time of the accident, however, the gong did not function. *See id*. at 546.  Despite the

failure of the car driver to stop, look, and listen before traversing the railroad crossing, the

Alabama Supreme Court ruled it error for the trial court to refuse to submit to the jury the

question of the defendant railroad's negligence in not ringing the gong, making the

following observation:

> Pretermitting any decision as to the duty of the defendant railroad to establish
> an automatic gong at this particular crossing in the first instance, we held that,
> having so established it, and allowed travelers who were aware of it to rely
> to some extent upon its operation as a warning to them in crossing, it was
> defendant's duty  to keep it in a working condition, or else give notice in
> some way that it was out of repair or was not working, and its failure to give
> warning was a circumstance for the jury as bearing both upon its negligence
> and the conduct of the driver.  It was further held that –
>
> On failure of the device to act, in the absence of other sufficient notice or
> warning in lieu thereof, the obligation to rebut the prima facie presumption [of
> negligence] thereupon passes to the railroad or operating company so using
> or relying upon the signal. . . .
>
> As an abstract proposition, it was not incumbent upon defendant to keep and
> maintain this gong at this crossing, since other modes of warning might
> equally suffice.  But, having so established it, and educated travelers to rely
> upon it, it was defendant's duty either to keep it in efficient operation, or to
> give notice that it was not in working order.

*Washington*, *supra*.  Similarly, the *Harrison* Court – in upholding the decision of the trial

court to refuse several jury charges that would have, *inter alia*, provided the jury a means

to exonerate the defendant for its failure to ring the gong at the time of the railcar's passing

– explained:

> The right of travelers to rely on automatic signals at crossings has been of
> recent and frequent discussion by the courts.  The rule of the cases is that
> one who proceeds along a thoroughfare to a crossing when and where an
> automatic signal is known by him to be maintained, while entitled to place or
> warranted in giving some degree of reliance upon the indication of safety

8

which the signal implies, must nevertheless use such care in addition as an ordinarily prudent man would exercise under like conditions.   Thus, if a railroad company has placed a gate, flagman, signal bell, gong, or automatic device at a crossing, and has so long maintained the same to warn travelers of the approach of trains or engines of the danger of attempting to cross that travelers (including plaintiff) have relied, and are authorized to rely, thereon in the exercise of due care, nothing of contradictory indication appearing, the failure of the company to operate the gate, or to flag, or to ring the bell, gong, or other automatic device at the crossing or in lieu thereof to give other due and proper warning of the approach of the train, would not wholly excuse the traveler approaching such crossing from the exercise of a reasonable care and caution such as would ordinarily be exercised by a careful and prudent man under similar circumstances. It would, however, have the effect, in the case of a traveler meeting his death at such crossing, to invoke the presumption that such traveler was in the exercise of reasonable care and caution immediately before and at the time of the collision, unless the other evidence should rebut that presumption.  It has been held proper, where such automatic signal was maintained at crossings, to show that it did not work, on both the question of defendant's negligence and of plaintiff's freedom from fault. . . .  Though the burden of proof declared by the statute does not take from the plaintiff the burden of proving the circumstances to be such that the statute can apply or cast upon the railroad the burden of proof in case of wanton injury or subsequent negligence yet, having installed the mechanical signal at public road crossings, and having educated or induced the traveling public . . . to observe its warnings or directions, on failure of the device to act, in the absence of other sufficient notice or warning in lieu thereof, the obligation to rebut the prima facie presumption thereupon passes to the railroad or operating company so using or relying on the signal.

*Harrison*, 82 So. at 542-43 (citations and quotations omitted).

CSX argues that both *Washington* and *Harrison* are inapposite to the instant case.

As to the former, CSX notes that the flashers were properly functioning and visible as Mr.

Hand approached the crossing.   (Doc. # 30, p. 3).   The presence of these working

warnings, then, renders irrelevant the presence or absence of flares.

The absence of flares at this crossing did not lessen his duty to approach the crossing at a safe and appropriate speed as required by Ala. Code § 32-5(A)-170, or to stop, look and listen as required by § 32-5(A)-150(a)(1).  These statutes impose an absolute duty on the motorist and there are no exceptions

for compliance as presumed by plaintiff when additional warnings, such as flares, are not present.

(*Id*.). As to the latter case, *Harrison*, CSX contends that it forecloses any attempt by Mr. Hand to escape the rule of stop, look, and listen.

The very rule from which the plaintiffs claim their theory springs contains a statement that removes their facts from the rule: "in the absence of other sufficient notice or warning in lieu thereof". Even if there were no flares at this crossing, the red flashing lights visible from one-half mile away were more than sufficient notice or warning of the possibility of a train on the track.

(*Id*. at p. 4 (quoting *Harrison*, 82 So. at 543)).

Several ideas are packed into these arguments. At the forefront is the idea – advanced perhaps implicitly by the rhetorical force of CSX – that the statutes discussed *supra* abrogate the common law. The court, however, sees no evidence of this proposition. Statutory abrogation of common law principles must be evident and unmistakable. *See, e.g., Holmes v. Sanders*, 729 So. 2d 314, 316-17 (Ala. 1999). And in the absence of such abrogation, statutes are to be construed in accordance with the common law. *See id.* at 317.

Cases of a cloth both state and federal, tendered by both plaintiff and defendant, harp upon the interplay of the common law and the relevant statutory scheme. *See, e.g., Ridgeway*, 723 So. 2d at 604-05; *Collier v. Crumbley*, 684 So. 2d 1332, 1333 (Ala. Civ. App. 1996); *Gibson*, 878 F. Supp. at 1460-61. More importantly, however (given the repeated averments of CSX to the contrary) these and other like cases insist upon the fact that the stop, listen, and look rule is not absolute. *See, e.g., Ridgeway, supra; Lambeth v. Gulf,*

10

*Mobile & Ohio R.R. Co.*, 141 So. 2d 170, 172 (Ala. 1962); *Louisville & Nashville R.R. Co. v.*

*Williams*, 55 So. 218, 223 (Ala. 1911)

> ("What is, or is not, ordinary care often depends upon the facts of the
> particular case. The rule, 'stop, look, and listen,' is not arbitrary or invariable
> as to time and place. It may depend in some measure upon the familiarity of
> the one passing, with the place of crossing; and he cannot always be said to
> be guilty of contributory negligence, because he failed to stop, look, or listen
> at one particular time or place, rather than at another. The common law is not
> as definite and certain in this respect as some of the statutes touching signals
> of danger.");

*see also Stallworth v. Illinois Central Gulf R.R.*, 690 F.2d 858, 864 (11th Cir. 1982) ("The

Alabama Supreme Court has repeatedly held that 'the 'stop, look and listen' rule is not hard,

fast or absolute in its application.'") (quoting *Alabama Great Southern R.R. v. Johnston*, 199

So.2d 840, 848 (Ala. 1967)). In fact, CSX recognizes as much by noting the *Harrison* Court's

observation that "in the absence of other sufficient notice or warning in lieu thereof, the

obligation to rebut the prima facie presumption thereupon passes to the railroad . . . ."

*Harrison*, 82 So. at 543.

As noted *supra*, CSX believes this final statement forecloses any remedy for Mr.

Hand.  The court believes this conclusion is a touch premature.  The facts undisputedly

show: (1) that the railroad has a history (at the time of the accident) approaching twenty

years of placing flares beneath the flashers when a train is or is about to foul the crossing;

(2) that the railroad did not place flares beneath the flashers on the night in question; (3)

that Mr. Hand has a degree of familiarity approximating eleven years with the section of US

31 across which the public grade crossing traverses; and (4) that the flashers were

11

functioning and Mr. Hand did see them approximately one-half mile before he struck the rail car.

Whether these facts demonstrate that Mr. Hand was in fact contributorily negligent (thus foreclosing recovery) is not a question for this court. For the facts of the instant case lend themselves to differing interpretations. A reasonable person may well decide that Mr. Hand was negligent for failing to stop, look, and listen upon seeing the flashers. A reasonable person might also decide that since the railroad has a lengthy history of using both the flashers and the flares when a train was or was about to foul the crossing, the failure of the railroad to use the flares excuses Mr. Hand's failure to stop, look, and listen. Where different conclusions can reasonably be drawn from the questions presented by the evidence, the questions are due to be submitted to the jury. *See Ridgeway*, 723 So. 2d at 607; *see also Savage Indus., Inc. v. Duke*, 598 So. 2d 856, 859 (Ala. 1992); *Adams v. Coffee County*, 596 So. 2d 892, 895 (Ala. 1992); *Harrison*, 82 So. at 541. Summary judgment is thus due to be denied.[4]

## V.   Conclusion

The court will enter an appropriate order in conformity with this memorandum of opinion.

---

[4]In light of this conclusion, the court finds the motion of CSX to strike the statement of Steve Hall (Doc. # 29) **MOOT**. The court likewise finds the motion of CSX to extend the deadline to retain and disclose experts and provide other information pursuant to Rule 26 of the Federal Rules of Civil Procedure for a period of thirty (30) days from the date of entry of this order due to be **GRANTED**.

12

Done, this _**31**_<sup>st</sup> of January, 2002.

Edwin Nelson
United States District Judge

13